**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dancesport Videos LLC, an Arizona limited liability company,<br><br>            Plaintiff,<br><br>v.<br><br>James Kunitz, husband, et al.,<br><br>            Defendants. | No. CV11-1850 PHX DGC<br><br>**ORDER** |

Plaintiff Dancesport Videos LLC ("DSV") filed a first amended and supplemental complaint against Defendants James and Jaana Kunitz and Digital Video Creations, Inc. ("Digital") on March 3, 2012. Doc. 44. Defendants filed a first amended and supplemented counterclaim ("the counterclaim") against DSV and twelve Third Party Defendants. Doc. 58. Third Party Defendants Russ Clark, Trustee of the Russ S. Clark Revocable Living Trust; Rosalyn DeBeve, Trustee of the Rosalyn O. DeBeve Revocable Living Trust; KC Limited Company LLC; Hunter Lisle; Carey Mason; Mark Theiss; Rene Roberts; EJ Forever, Emmanuel Pierre Antoine, and Jasmin Dadlani, Co-Trustees of the Jepa Revocable Living Trust, (collectively "Third Party Defendants") filed separate motions to dismiss the counterclaim pursuant to Rule 12(b)(2) and 12(b)(6). Docs. 73, 75, 77, 79, 81, 83, 97, and 104. The same Third Party Defendants filed a joint motion to dismiss the counterclaim on statute of limitations grounds. Doc. 114. Defendant and Counter-Claimant Digital filed separate oppositions to the motions to

dismiss on Rule 12(b)(6), 12(b)(2), and statute of limitations grounds (Docs. 115, 118, 131), and the Third Party Defendants filed joint replies. Docs. 140, 141, 142. Third Party Defendants Robert and Julia Powers filed a separate motion to dismiss Defendants' tortious interference counterclaim pursuant to Rule 12(b)(6). Doc. 108. Digital filed an opposition to this motion (Doc. 122), and the Powerses filed a reply. Doc. 132. All of the pending motions have been fully briefed. For the reasons set forth below, the Court will deny each of the motions.[1]

**I.   Background.**

DSV is an Arizona-based limited liability company in the business of developing aerobic exercise, dance, and fitness media and instructor training programs and licenses. Doc. 44, ¶¶ 1, 16. Defendants James and Jaana Kunitz are original members of DSV and owners and members of Digital, which was granted a minor membership in DSV when DSV was organized on June 6, 2005. *Id.*, ¶¶ 13-15.

DSV's original members agreed that Bob and Julia Powers, both world class rhythm dancers, would raise the initial capital and bring in investors, and James and Jaana Kunitz, also world-class rhythm dancers, would handle video production and marketing. *Id.*, ¶¶ 18-19. On July 12, 2005, DSV's original members entered into an Operating Agreement governing their relationships and contributions. *Id.*, ¶ 20. Subsequently, Digital and B&J Rhythm, Inc., a company owned by Bob and Julia Powers, became the managing members of DSV. *Id.*, ¶ 25.

The parties present differing accounts of ensuing events. Plaintiff claim that DSV successfully marketed and sold aerobic dance exercise videos featuring Julia Powers and Defendant Jaana Kunitz under the Dance and Core Rhythms Trademarks and that Defendants began to produce a competing product known as "Extreme Cardio Dance" featuring only Jaana Kunitz and using the 3 Core Movements developed by DSV. *Id.*, ¶¶

---

[1] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

17-62. Plaintiff alleges that under Digital's management, DSV was paying significant amounts in expenses to third-party venders and in compensation to Digital, but distributing minimal profits to DSV members. *Id.*, ¶ 63. Plaintiff alleges that a majority of members voted on September 13, 2009 to freeze DSV accounts and suspend Digital from serving as the management company, that Bob Powers notified Digital via email on September 14, 2009 that they had voted to take control of DSV's checking account, and that James Kunitz determined on September 17, 2009 that the Management Agreement was terminated. *Id.*, ¶ 65. Thereafter, Plaintiff alleges, James Kunitz repeatedly made unlawful assignments of the Dance and Core Rhythms Trademarks ("the Trademarks") to Digital, used the Trademarks in association with Digital's competing products, misdirected website traffic from DSV to Digital, and falsely represented to DSV's marketing company and its affiliates that DSV was out of business. *Id.*, ¶¶ 68-126. Plaintiff's first amended and supplemental complaint makes thirteen claims for relief based on these allegations. *Id.*, ¶¶ 127-219.

Defendants allege in their counterclaim that during the time that Digital served as the management company for DSV, Robert Powers falsely represented to James Kunitz that Powers had obtained approval from all DSV investors to spend money on a side venture that involved certifying dance instructors around the country to teach Core Rhythms in fitness classes. Doc. 58, ¶¶ 25-26. Defendants allege that this venture was unsuccessful, resulting in a loss of $425,000 to $450,000, and that James Kunitz solicited the vote of all DSV members to cut Powers' salary and to prevent him from spending any more money on this business. *Id.*, ¶¶ 27-30. Defendants allege that the members requested one month to consider Kunitz' proposal and that during this time Robert and Julia Powers approached each member and persuaded them to vote to remove Digital from management of DSV and to retain B&J Rhythms as sole manager in exchange for receiving a monthly salary for serving on a board of directors despite the fact that the members had no involvement in the day to day operations of DSV or expertise in running the business. *Id.*, ¶ 32. Defendants allege that these and subsequent actions by the

Powerses and Third Party Defendants effectively left DSV as a non-functioning entity. *Id.*, ¶¶ 33-36. These allegations are the basis of Defendants' counterclaims for breach of fiduciary duty against the Third Party Defendants, tortious interference against Robert Powers, and misappropriation of likeness against DSV. *Id.*, ¶¶ 37-48.

**II.   Rule 12(b)(6) Legal Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.   Third Party Defendants' Motions to Dismiss Breach of Fiduciary Duty Claim.**

**A.   Failure to State a Claim.**

The Third Party Defendants argue that Arizona law precludes holding a member liable for the obligations and liabilities of a company solely on the basis of being a member, and that Counter-Claimants are, in essence, seeking to hold them liable merely for being members exercising their legitimate member rights when they cast votes to terminate Digital's Management Agreement. Doc. 77 at 8-9. Third Party Defendants also argue that Counter-Claimants fail to allege facts showing that they, as minority

interest holders in DSV, had a fiduciary duty to the Kunitzes or Digital. *Id.* at 10-12.[2]

Third Party Defendants' first argument is unpersuasive. The counterclaim does not seek to hold them liable simply for being members who exercised their rights to vote – in this case, to revoke Digital's Management Agreement. *See* Doc. 77 at 9. Rather, Counter-Claimants allege that, once voted onto DSV's board of directors, Third Party Defendants took actions solely for their own benefit and to the detriment of DSV, including distributing all of DSV's revenues to themselves as a "salary expense" and thereby depriving Digital of its rightful distributions. Doc. 58, ¶32. Counter-Claimants further allege that Third Party Defendants, while collecting monthly salaries, failed to perform the duties incumbent upon directors – such as paying vendors and creditors and promoting the company – effectively letting the company fail while distributing its remaining proceeds to themselves. *Id.*, ¶¶ 34, 36. These alleged actions go beyond exercising ordinary member rights.

The argument that Third Party Defendants' did not owe a fiduciary duty to Counter-Claimants because they are merely minority members of an LLC and had no position of superiority over the Kunitzes or Digital is also unpersuasive. Counter-Claimants cite to Arizona case law for the proposition that directors of a corporation owe a fiduciary duty to the owners of the company (Doc. 115 at 7), and to fundamental principles of agency law holding that managers of an LLC owe a fiduciary duty to the company and its members. *Id.*, citing Restatement (Second) of Agency § 387. Counter-Claimants have alleged not only that the named Third Party Defendants are members of DSV, but that, as of August 24, 2009, they became part of a board of directors. Doc. 58, ¶¶ 11-18. Although Counter-Claimants allege that DSV is an Arizona limited liability company and not a corporation, they allege actions taken by Third Party Defendants in their role as directors that plausibly gave them "superiority of position" over the Kunitzes

---

[2] Because Third Party Defendants make substantially identical arguments, unless otherwise noted, the Court will cite specifically to the arguments put forth by K.C. Limited Company, LLC as representative of the arguments of all Third Party Defendants.

and Digital as non-managing members and thereby placed Counter-Claimants in a role of "peculiar reliance" upon them for the ongoing viability of the company. *See Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 335 (Ariz. Ct. App. 1997) (citing the grounds for a fiduciary relationship).

Third Party Defendants' citation to case-law from other jurisdictions (Doc. 140 at 7) does not lead to a contrary conclusion. These cases stand for the proposition that minority members of an LLC do not owe a fiduciary duty to other members when they are neither managers nor controlling members. *See, e.g.*, *Coventry Real Estate Advisors, L.L.C. v. Developers Diversified Realty Corp.,* 84 A. D. 3d. 583, 584 (N.Y. 2011) (stating that under Delaware law, fiduciary duties are imposed, "'*only* on managers and those designated as controlling members of an LLC,' and not on non-managing minority members such as DDR.") (internal citation omitted). None of the cases cited, however, contains the facts presented here – allegations that Third Party Defendants took actions not simply as minority members, but as directors of the company, funneling money to themselves and depriving Digital of its rightful disbursements.

Third Party Defendants dispute that there was a board of directors as might be found in a corporation, but this factual dispute cannot be resolved at the pleading stage where the Court is required to take all well-pled allegations in the complaint as true and to construe the complaint in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Under the facts alleged, Counter-Claimants have made a plausible claim that a fiduciary relationship existed between the named Third Party Defendants and Counter-Claimants from the time the Third Party Defendants allegedly became directors, and that the Third Party Defendants breached their fiduciary duties when they engaged in actions solely for their own financial benefit to the loss of DSV.

Third Party Defendants argue for the first time in their reply that the only action available to Counter-Claimants under Arizona law is a derivative action on behalf of DSV, and that their individual action should therefore be dismissed. Doc. 140 at 9-12.

The Court will not consider arguments made for the first time in a reply brief. *See, e.g.*, *Delgadillo v. Woodford,* 527 F.3d 919, 930 n. 4 (9th Cir.2008); *Marlyn Nutraceuticals, Inc. v. Improvita Health Products,* 663 F.Supp.2d 841, 848 (D. Ariz. 2009). The Court will deny Third Party Defendants' motion to dismiss on the basis of failure to state a claim.

### B.  Statute of Limitations.

Third Party Defendants argue that Counter-Claimants did not file their breach of fiduciary duty claim within the applicable two-year statute of limitations. "[T]he statute of limitations defense . . . may be raised by a motion to dismiss . . . [i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citing *Graham v. Taubman*, 610 F.2d 821 (9th Cir. 1979)). Even if the relevant dates in the complaint are beyond the statutory period, however, the "'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995); *see Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Indeed, "[d]ismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (citing *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991) (quoting *Jablon*, 614 F.2d at 682)); *see Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996). "'Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Hernandez*, 138 F.3d at 402 (quoting *Supermail Cargo*, 68 F.3d at 1206); *see Federal Civil Procedure Before Trial* § 9:194, at 9-48, §9:214.1, at 9-57.

Third Party Defendants assert that Counter-Claimant's breach of fiduciary duty claim is subject to the two-year statute of limitations found in A.R.S. 12-542(3) for tort

claims involving injury to property. Doc. 114 at 7. They argue that the bases for this claim, as stated in the counterclaim, are the votes taken on September 21, 2009 to terminate DSV's Management Agreement with Digital, and on October 8, 2009 to oust James and Jaana Kunitz from membership. Doc. 114 at 9; *see* Doc. 58, ¶¶ 19-20. Counter-Claimants filed their first counterclaim on December 23, 2011, followed by a corrected counterclaim on January 12, 2012 (Doc. 33), and the instant counterclaim on May 31, 2012 (Doc. 58), all more than two years after these votes. Third Party Defendants argue that it is apparent on the face of the counterclaim that the statute of limitations had expired and Counter-Claimants allege no facts from which to conclude that the statue was tolled. Doc. 114 at 9.

Counter-Claimants do not dispute that their claim is subject to a two-year limitations period. They argue, however, that their reference to the October 8, 2009 ouster alleged in Plaintiff's complaint does not establish when the ouster actually took place and that, as set forth in the attached affidavit of James Kunitz, they did not actually learn of the ouster or their loss of interest in DSV until DSV provided them notice on March 26, 2011. Doc. 131 at 3-4. Counter-Claimants further argue that they alleged ongoing violations of Third Party Defendants' fiduciary duties, such as failing to pay vendors and creditors, distributing income only to themselves and not DSV, and effectively winding down the business, for which Counter-Claimants argue they were unable to provide precise dates because they were shut out of the business. *Id.* at 4-6. Counter-Claimants argue that the discovery rule applies and the statute of limitations was tolled until they received written notice of Third Party Defendants' actions in March 2011 because, apart from this notice, they were not aware of what was actually happening inside the company or when the alleged breaches of fiduciary duty occurred. *Id.* at 7.

The date Counter-Claimants became aware of actions alleged in the counterclaim constitutes a factual issue that cannot be resolved at the pleading stage. Because it does not appear beyond doubt that Counter-Claimants can prove no set of facts that would establish the timeliness of their claim, the Court will deny Third Party Defendants'

motion to dismiss on statute of limitations grounds.

C. **Personal Jurisdiction.**

With the exceptions of KC Limited Company, LLC, which identifies itself as an Arizona limited liability company (Doc. 77 at 3), and Rosalyn DeBeve, who the counterclaim identifies as residing in Phoenix, Arizona (Doc 58, ¶ 18), the Third Party Defendants all argue that the counterclaim against them should be dismissed for lack of personal jurisdiction. *See, e.g.*, Doc. 73 at 9-15. Counter-Claimants argue in response that the Court has specific personal jurisdiction. Doc. 118 at 3.

Plaintiff bears the burden of establishing personal jurisdiction. *See, e.g. Zigler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). Because the Court is resolving the motion to dismiss without holding an evidentiary hearing, Plaintiff "need make only a prima facie showing of jurisdictional facts to withstand the motion." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). That is, Plaintiff "need only demonstrate facts that if true would support jurisdiction over [Defendants]." *Ballard*, 65 F.3d at 1498; *see Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1085 (9th Cir. 2000) ("Where . . . the district court does not hold an evidentiary hearing but rather decides the jurisdictional issue on the basis of the pleadings and supporting declarations, we will presume that the facts set forth therein can be proven."). Disputed facts must be decided in Plaintiff's favor. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

Because there is no federal statute that governs personal jurisdiction in this case, Arizona's long-arm rules apply. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995). Arizona Rule of Civil Procedure 4.2(a) "provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Batton v. Tenn. Farmers Mut. Ins. Co.*, 736 P.2d 2, 4 (Ariz. 1987)). Federal due process requires that a defendant have sufficient minimum contacts with the forum state so that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Ninth Circuit applies a three-part test for specific jurisdiction. Such jurisdiction exists if (1) the defendant purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, (2) the claim arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985). The Court will address each of these three factors.

### 1. Purposeful Availment.

In cases arising out of contractual relationships, including those involving related tort claims, the Ninth Circuit applies the "purposeful availment" test enunciated in *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), which "requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state. This focus on the defendant's affirmative conduct is designed to ensure that the defendant is not haled into court as the result of random, fortuitous, or attenuated contacts.'" *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citation omitted); *see Roth*, 942 F.2d 617, 621 (9th Cir. 1991) (applying purposeful availment test in breach of contract action); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817 (9th Cir. 1988). A defendant has engaged in affirmative conduct and thereby "purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum.'" *Gray*, 913 F.2d at 760 (quoting *Burger King*, 471 U.S. at 475-76); *see Cybersell*, 130 F.3d at 417 (stating that "the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents") (citing *Ballard*, 65 F.3d at 1498).

Counter-Claimants argue that the Third Party Defendants purposely availed themselves of the privilege of conducting business in Arizona because the alleged tortious conduct took place in Arizona while the Third Party Defendants were acting as a

board of directors of DSV, the Third Party Defendants had access to DSV's Arizona bank accounts, and the Operative Agreement and First Amendment that all of them signed contains an Arizona choice-of-law provision. Doc. 118 at 13. In sum, Counter-Claimants assert that through the ownership and operation of a business in Arizona, Third Party Defendants purposely availed themselves of the privilege of conducting business in the state. *Id.*

Taking the allegations in the counterclaim and pleadings as true, the Court finds that Counter-Claimants have made a prima facie showing for personal jurisdiction. The counterclaim alleges that DSV is an Arizona limited liability company that was conducting business and maintaining its principle place of operations in Arizona. Doc. 58, ¶ 6. As previously discussed, the counterclaim also alleges that each of the named Third Party Defendants took on the role of director on a board of directors and collected a salary from DSV. Doc. 58, ¶ 32. The Declaration of James Kunitz asserts that the Third Party Defendants took over day-to-day decisions for the company, including a decision to suspend all media buys. Doc. 119, ¶ 9. Counter-Claimants list specific meetings regarding the business operations of DSV in which it alleges each of the Third Party Defendants participated. Doc. 118 at 8-9. Although Third Party Defendants argue that they did not attend meetings in person (Doc. 141 at 6), physical presence in the forum state is not required to show purposeful availment where Counter-Claimants have alleged that participation in the meetings was in furtherance of directing the operations of the Arizona-based company. Assuming at this stage that Counter-Claimants can prove the facts set forth in their counterclaim and declaration, the actions alleged are sufficient to show that Third Party Defendants purposely availed themselves of the privilege of doing business in Arizona.

### 2. "Arising Out of."

The Ninth Circuit has adopted a "but for" test for determining whether a cause of action arises out of a defendant's forum-related activities. *See Omeluk v. Langstein Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995). The "arising out of" requirement is

met if, "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). Here, the counterclaim of breach of fiduciary duty would not exist but for the Third Party Defendants' alleged actions as directors of DSV.

### 3.     Reasonableness.

An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements are satisfied. *See Int'l Shoe*, 326 U.S. at 316; *Ziegler*, 64 F.3d at 474-75. A district court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if these two requirements are met. *See Ballard*, 65 F.3d at 1500. The burden then shifts to the defendant to "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

The Ninth Circuit considers seven factors to determine whether the exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant of litigating in the forum, (3) the extent of conflicts with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the dispute, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *See Ziegler*, 64 F.3d at 475 (citing *Terracom*, 49 F.3d at 561); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (listing several of the seven factors).

Each of the Third Party Defendants argues that the extent of his or her involvement in Arizona was limited to the activities of a minority shareholder and that this does not constitute purposeful interjection. *See, e.g.*, Doc. 73 at 12, 141-1, ¶¶ 6-8. As noted above, however, Counter-Claimants assert that each Third Party Defendant acted purposefully in receiving salaries and assuming direction of the business of DSV. This factor weighs in favor of asserting personal jurisdiction.

Third Party Defendants' argue that litigating in Arizona would be unfairly

burdensome because, as residents of other states, they would have to bear the expense of travel for depositions and court appearances. Doc. 73 at 12-13.[3]  Although the Court is mindful that litigating in an out-of-state forum is potentially more costly and more burdensome than litigating in one's home state, Third Party Defendants have not presented evidence that this would create an undue hardship such that it would be unreasonable to hale them into this forum for Counter-Claimants' Arizona-based claims.

Third Party Defendants also argue that their inclusion in the litigation would confuse the issues, leading to judicial inefficiency, because the core dispute is between Counter-Claimants and DSV.  Doc. 73 at 13.  Because the Court has already determined that Counter-Claimants have alleged sufficient facts to state a plausible claim against each of the Third Party Defendants, this argument lacks merit.  Judicial efficiency would best be served by having the identical claim against all Third Party Defendants adjudicated in the same forum.

On the whole, Third Party Defendants have failed to present a compelling case that personal jurisdiction in Arizona would be unreasonable.  The Court concludes that it has specific personal jurisdiction over Third Party Defendants.

**IV.  Robert and Julia Powers' Motion to Dismiss the Tortious Interference Claim.**

Counter-Claimants make a tortious interference claim against Robert Powers, alleging that Powers wrongfully effectuated the termination of Digital's Management Agreement with DSV, causing Digital to suffer financial harm.  Doc. 58, ¶¶ 42-45.  Powers argues that the Court should dismiss this claim under Rule 12(b)(6) because it is missing an essential element, namely, that an independent third party interfered with the contract of two other parties.  Doc. 108 at 2.  Powers argues that, taking the allegation in the counterclaim as fact, he and Julia Powers were officers and "control persons" of DSV and, as such, he is not an independent third party who can be held liable for interfering with DSV's contract.  *Id.* at 3-4.  Powers also argues that long-standing Arizona law

---

[3] Unless otherwise noted, the Court will cite to the arguments put forth by Russ Clark as representative of the arguments of all Third Party Defendants.

holds that an officer of a company cannot be held liable for tortious interference with a contract when termination of the contract results from business decisions made in the course of his ordinary business duties. *Id.* at 4.

Under Arizona law, the elements of a claim of tortious interference with contract are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bur. of Maricopa County, Inc.*, 637 P.2d 733, 740 (Ariz. 1981); *see also* Restatement (Second) of Torts § 766 (1977). "In addition to proving the four elements stated in *Antwerp Diamond Exchange*, the plaintiff bringing a tortious interference action must show that the defendant acted improperly." *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (Ariz. 1985).

Counter-Claimants argue that they have satisfied all the necessary pleading requirements because they have alleged that they had a valid management contract with DSV (Doc. 58, ¶ 23), Powers knew of this (*id.*), Powers intentionally interfered with the contract, inducing breach (*id.*, ¶ 32), and the breach resulted in damages. *Id.*, ¶ 44. Counter-Claimants further argue that Powers was, in fact, a third party to the contract because the contract was between Digital and DSV and it was B&J Rhythms, not Powers, that was the managing member of DSV. Doc. 122 at 7. Counter-Claimants further argue that Powers' actions were improper and therefore not within the scope of his employment agreement. *Id.* at 7-10.

In *Payne v. Pennzoil Corp.*, 672 P.2d 1322, 1327 (Ariz. Ct. App. 1983), the Arizona Court of Appeals affirmed that for purposes of tortious interference, the contract must be between the Plaintiff and a third party. The Appeals Court found that employees "acting *for* the company . . . cannot be interfering with a contract *of* the company." *Id.* (emphasis in original). Counter-Claimants attempt to distinguish this and other cases

1 relied on by Powers because they pertain to motions for summary judgment for which the
2 liberal pleading standard at the motion to dismiss stage does not apply.  Doc. 122 at 10.
3 But the fact that the Court must take as true the allegations in the complaint does not
4 change the legal standard for tortious interference under Arizona law.  As Powers argues,
5 the allegations in the counterclaim clearly allege that "Powers was an officer of DSV and
6 was the control person of such entity."   Doc. 132 at 2, citing Doc. 58, ¶ 7.   The
7 counterclaim also alleges that Powers promised that DSV would pay Third Party
8 Defendants a salary upon their votes to remove Digital from management – facts that,
9 taken as true, show that Powers was acting in a management capacity in the name of
10 DSV, and not as an independent third party.  *See* Doc. 58, ¶ 32.

11 Powers can be still held liable for tortious interference with a contract between
12 Digital and DSV, however, where he is alleged to have acted improperly and not for the
13 benefit of the company.  *Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 464 (D. Ariz. 1996)
14 (citing *Wagenseller v. Scottsdale Memorial Hosp.*, 710 P.2d 1025 (Ariz.1985)); *see also*
15 *Bernstein v. Aetna Life & Cas.*, 843 F.2d 359, 367 (9th Cir. 1988) (finding on the basis of
16 *Wagenseller*, 710 P.2d at 1041-42, that a supervisor acting as agent for an employer
17 could be found liable for inducing a breach of the employer's own contract where there
18 was an issue of fact that the supervisor acted improperly).

19 Powers argues that Counter-Claimants do not specifically allege that he acted
20 improperly to interfere with Digital's management contract.  Doc. 132 at 4-6.  Powers'
21 argument appears to rest primarily on the absence of the word "improper" in the
22 counterclaim and the purported lack of an alleged causal link between Powers' actions
23 and the decision of DSV members to terminate Digital's management agreement.  *Id.* at
24 4.  The Court finds these points unpersuasive.  The counterclaim alleges that Powers
25 offered to pay DSV's members a salary to become members of a board of directors in
26 exchange for their votes to remove Digital from its management position.  Doc. 58, ¶ 32.
27 It further alleges that he did this despite the fact that the members had no experience or
28 expertise in running the business and there was no legitimate business purpose for this

action. *Id.* The counterclaim goes on to allege that Powers acted in retaliation against Digital for challenging his expenditures, and that he succeeded in "wrongfully effectuating from the Board of Directors the termination of the management agreement between Digital Video and DSV." *Id.*, ¶¶ 43, 44. These allegations are sufficient to allege improper conduct that was adverse to the interests of DSV and that was causally linked to the termination of Digital's management contract. The Court will deny the Powers' motion to dismiss the tortious interference claim.

**IT IS ORDERED:**

1. Third Party Defendants' motions to dismiss the first amended and supplemented counterclaim pursuant to Rule 12(b)(6) (Docs. 73, 75, 77, 79, 81, 83, 97, and 104) is **denied**.

2. Third Party Defendants' motions to dismiss the first amended and supplemented counterclaim pursuant to Rule 12(b)(2) (Docs. 73, 79, 81, 83, 97, and 104) is **denied**.

3. Robert and Julia Powers' motion to dismiss Counter-Claimants' tortious interference counterclaim (Doc. 108) is **denied**.

Dated this 1st day of November, 2012.

David G. Campbell
United States District Judge